Good morning, Your Honors. May it please the Court, my name is Ralph Casarda for Appellant Coos County Board of County Commissioners, and I will be reserving four minutes for rebuttal. In this case, the Service decided to continue listing the tri-state Marillet as a threatened distinct population segment, the DPS, even though a five-year review of the population showed there was no basis for the DPS listing. This no-change determination violates the Service's duties to make a removal determination when a review shows listing is unlawful, to initiate delisting procedures, and it is also in excess of the Service's statutory jurisdiction and authority. The Service here had a mandatory duty to determine that the tri-state Marillet should be removed from the threatened list after a five-year review showed there was no basis for a DPS listing. The defendant's duty to make this determination flows from Section 4C.2 of the Endangered Species Act, the Act. That section states that the Secretary shall conduct a review of every listed species at least once every five years, and on the basis of that review, determine whether a species should be removed from the list or changed in status. And it did all that, right? And it decided it shouldn't be removed from the list. Well, Your Honor, they did do the — they did do a five-year review. And they said it shouldn't be removed from the list. But first — Because it wasn't — because it was still threatened within a significant area of its range. Well, first of all, Your Honor, they concluded that the tri-state Marillet was not a distinct population segment, that it was no longer discrete, and they did not even reach the significant analysis for a discrete — for a distinct population segment. So the service did do — once the service recognized that their tri-state Marillet was not a distinct population segment, there was no longer any basis for continuing to list the tri-state Marillet as a threatened population. Except that a district court had long ago determined that it wasn't a significant part of the range. That determination in 1992 is based on one sentence that the service made in 1991. Well, whatever it's based on, it was a final judgment of a district court. But the — the district court basically saw that the service said that the California, Oregon, and Washington are — comprise one-third of the geographic range of the Marbled Marillet, which ranges from California to the Aleutian Islands, and that was a significant portion of the range. However, what is important to remember here is that the service did not list the entire Marbled Marillet population. It only listed the tri-state population as a DPS, the California, Oregon, and Washington population as a distinct population segment. If you — if one decides that a species is threatened in a significant portion of the range, does one have to list the whole species throughout the range? One must list either a species, a subspecies, or a DPS. If it — in this case — I'm talking about the DPS. I'm talking about — let's say, grossly. I decide the American alligator, let's say, is threatened in Louisiana, which is a significant portion of its range, but it's flourishing in Florida. Do I have to list the whole species, or can I say, well, I'm going to list it in the Louisiana portion, and don't DPS me. I'm going to assume there's not a distinct population segment. You must list the entire species, Your Honor. Excuse me? You must list the entire species, Your Honor, or — Only protected, however. And you can determine where — if you're listing the whole species, then you can determine where to have the critical habitat areas. But if you're only going to look at a population and list that population as a distinct population segment — But here the population is defined geographically, so that — I mean, so that the two are the same, right? In other words, the distinct population segment is the marble murrelet in this area. Therefore, if it's a significant part of the range, it's the same birds we're talking about, right? No, Your Honor. The marble murrelet ranges from California — I understand that. But if Washington, Oregon, and California is a significant part of the range, then the birds that are being dealt with are the same birds that are being dealt with. If you talk about them as that same area as — the birds in that same area as a DPS are the same birds. The analysis is not that you select a DPS and determine if it's a significant portion of the DPS's range. The analysis is to look at the significant portion of the range of the entire species. I understand that. But that — but all I'm saying is that the district court in 1991 or whenever it was determined that this area was a significant portion of the range, and therefore there should be a listing for that reason. And then it turned back to the agency, the DPS question. But they — but in the end, you're protecting the same birds to the same extent, whichever way you do it. Right? Which explains why the agency, after it determined that it wasn't meeting the DPS standard, still determined that these were threatened in a significant part of the range, which is what they said. It said that it was still threatened in the marbled murrelet DPS, not the marbled murrelet. And not — and in the five-year review, Your Honor, the service did not conduct any type  Let's switch gears for a minute. From where do you get the suggestion, even if everything you say is true, that there was an obligation to delist at this point as opposed to continue to investigate, which is what they said they were going to do? Yes, Your Honor. For two reasons. First, assuming that you can only list a species, subspecies DPS, and here the service determined that the tri-state murrelet was not a DPS in its five-year review. Once it did that, it was — it no longer had any discretion but was under a mandatory duty to implement delisting procedures because further listing would be outside the bounds of its statutory authority. Is that generally the case with respect to listing, for example? Isn't the petition system — if that's what you thought, you could go to the agency and file a petition and say that, but you didn't do that? The five-year review provides an independent basis for reviewing the list and making changes to the list. The petition process — Right. And it said decide whether to, and they did that. They decided not to. So they did what they were directed to do. You think that they should have done something else, so you could have filed a petition. You didn't do that. Well, Your Honor, let's go — You know, one is puzzled. You seem to be in a hurry to have them delist this beastly, but we've been in this process for how long now? Is it a couple of years now or more? A couple of years, yes, Your Honor. And it's just puzzling and I'm just curious. Why wouldn't one just file a petition and ask for it to be delisted, and don't say that it's futile, because it's less futile than it would be if they hadn't made that decision. Both the five-year review process, the five-year review, and the petition triggered the service to conduct a review. I didn't ask you that question. I said, why in the world didn't your folks just file a petition? And then you wouldn't be in this tangle where you're trying to convince us that the service had to do X and had to do Y, and had a mandatory duty, and it violated the APA, et cetera. Why didn't they just file a petition? Didn't they have to act quickly, allegedly? Your Honor, we would be going backwards if we filed a petition. The petition process first has the service conduct a 90-day review to determine if a petition may be warranted. Then it has 12 months if it may be warranted to determine if it is warranted and to publish its notice and proposed regulation. In this case, on the basis of the five-year review, the service concluded there was no basis for listing the tri-state murder as a DPS and was already, were already past the petition process in terms of where the review is. It had already determined that delisting was warranted. No, no, they didn't. They specifically decided the opposite. It didn't feel like filing a petition. I think that's what it comes to. Well, we'd rather do this. It's okay. I mean, that's the legal deliverance. Well, but I do believe that we were going backwards by filing a petition, Your Honor. It would duplicate a review that had already essentially been done by the service in its five-year review. So and recognizing that the service then violated its mandatory duty, and the duty here is there's a, you can only list a population if it's a distinct population segment. Once the service recognized that the tri-state marillet was not a distinct population segment, that removed any discretion from the service. It was then under a duty to delist, otherwise it would be in excess of its authority. Is your, is your position keying on the fact that they go through this whole analysis and it's quite convincing, but when they really get to page 21 of the analysis, that result, they say the threat situation has not changed such that the marillet DPS is no longer likely to become endangered. But they just said there is no such thing. Is that, is that what your position is keying on? That sort of looks like a grammar glitch of some kind, but it is a little bit troubling. Is that what your, is that your position? That they're talking about the DPS again, they just said the DPS didn't exist? Well, that's part of the, yes, Your Honor. Here they said that the threat situation has not changed since that, such that the marillet DPS is no longer likely to become endangered. So we're not looking at the, they did not conduct a review of the marbled marillet. They conducted a review of just the DPS. That's how they listed. But the other oddity here is that the main reason they said that there wasn't a DPS is because Canada is now, now says that this is threatened. Therefore, there is it may be not distinct anymore because there's Canada now agrees that these are threatened. Nobody has said it isn't threatened. It's just more threatened. It's not only threatened in, in, in, in, in this area, it's threatened in Canada too and there's going to be regulation in Canada. That's the main reason why they said there's no DPS anymore. Is that right? The main reason that there's no DPS is that it is no longer markedly, they went through the, the discrete and significant factors. Actually, they didn't go to the significance. They just went to the discrete factor for DPS, found that it wasn't discrete, marked, it wasn't markedly separated physically, physiologically, ecologically, behaviorally, and it was not eliminated by an international boundary with a country within which there are inadequate regulations for species. So even if these, these species are, are tremendously depleted in the lower 48 or in the lower three, tremendously depleted, and now Canada has decided they're tremendously depleted there, even so, they've got to delist it. That's, that sounds like the bottom line of your position. Well, that is the bottom line. I can understand that as a legal position, it's very hard to grasp it in, let's say, the, the, the human or maybe I should say the cosmic sense. It's hard to grasp why you would now just delist it without any further examination, just plain delist it, because now you know that the whole thing is threatened. It's very hard to get one's mind around. The proper analysis is that you first must define a population to be a distinct population segment. Why? You don't have to do that at all. If, if we say there's no distinct population segment, there's just one big population including Canada and the, and the three states. That's all there is. But the whole thing is threatened. I don't have to find a distinct population segment in the lower three states, do I? No, you don't, your honor. But then you do have to go through the regulatory process to list the marbled murrelet as threatened. And that has never been done in this case. I'd also like to point out that section 4C1 of the act does provide a mandatory duty to delist. And according to that section, the secretary shall revise each list to reflect recent determinations. So looking at section 4C, that section provides the duty to, to list species, but moreover to conduct five-year reviews of those species to determine on the basis of that review whether a species should be removed, and a duty to revise the list to reflect recent determinations. Your honor, that's, you asked me earlier where a duty comes from. And that is also where the duty comes from in section 4C1 of the act. If, if the court were to hold that there's no duty here, in effect, that is what, that is saying Congress required the service to conduct five-year reviews. But there is a duty. The duty is to do the five-year review and make a determination. And they did that. They made a determination, and they made a determination that the tri-state murrelet is not a discrete population segment. But that it, but, but that it should remain listed. Until, I mean, the, the conclusion of, of the, the contracted was, group's conclusion was given your responses to, does the five-year review indicate that a change in classification is warranted? No. The threat situation has not changed such that the murrelet DPS is no longer likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range. That's correct, Your Honor. And they're talking about the murrelet DPS, not the marbled murrelet. And that is, that is the big distinction here. Honor, just before I close, I would like to remove time for, for rebuttal. I would also just add that we do have also a claim under the APA, the service's decision to keep the tri-state murrelet listed as a DPS after the five-year review showed that it was not a DPS, we contend violates the APA because such action is in excess of its statutory authority. Can I just ask one question? The one thing you haven't said this morning, which takes up a good deal of your brief, is the contention that the petition deadlines are wrapped into this obligation. I gather you're walking away from that? We hold that the, or our argument is that the petition process does provide the timelines. That, that regulatory process, the notice and the proposed regulation, the final regulation time is, comes from the, the rulemaking authority. And so it's not, we're not saying it's taken out of the secretary's duty to propose rules in this case and to delist, but that's, that comes from the APA. That's the rulemaking authority. The, so we're not saying the petition process is taken out in terms of time, but both are independent basis for conducting reviews and for. So you're not, you're no longer claiming that, that there are, whatever this obligation is has, has the same deadlines as the petition process. That's what I understood you to be arguing before. It is still our argument, Your Honor, because the mandatory duty is a necessary implication, the delisting is a necessary implication of the determination that the Tri-State Maryland is not a DPS. So the duty to delist must, is, must come from somewhere. And if it's not in the section 4C, then it is in the petition process. But the petition process depends on if they can get a petition. But the petition process also says that the secretary, when the secretary makes a determination that delisting is warranted, then the secretary must then follow the regulatory process. Thank you, counsel. Thank you. Good morning. My name is Ellen Durkee. I'm with the U.S. Department of Justice. With me today at counsel's table is Eric Nagel from the Fish and Wildlife Service, and I represent the Fish and Wildlife Service. Congress created the petition process so that disgruntled public could bring, could force the Fish and Wildlife Service to make decisions on listing or delisting under a schedule. Now, the board could have, but it has not availed itself of that process. Instead, it advocates a tortured reading of the Endangered Species Act in order to sustain its claims that the Fish and Wildlife Service has a mandatory non-discretionary duty to propose the delisting of the marbled murrelet. And these two claims that they have are basically the same. One is brought under the Endangered Species Act citizen suit provision for a mandatory duty. The other was brought under the APA Section 706-1 alleging a mandatory duty. The district court correctly dismissed the complaint for lack of jurisdiction or for failure to state a claim. In our brief, we've laid out three arguments, any of which alone would be sufficient to affirm the district court. And briefly, I'll mention those, but I want to actually invert the order that they are in the brief in order to be more responsive to the board this morning. The three reasons are that what they're really complaining about is the finding and the conclusion of the five-year status review that no listing change is warranted. And that kind of claim is really going to the substance of the decision, and that does not state a legitimate mandatory duty claim. The second basis that we talked about in our brief was that the theory that the five-year status review is a petition is contrary to the language of the statute. You just assume one and two. But what about three? Why isn't there an APA claim here? Why isn't there an APA claim, which is what, the third one, right? Well, the only APA claim that they brought in the complaint, and I checked it again last night, the only, their reply brief says that they alleged the 706 APA generally, and they just cited their brief, their complaint, the whole thing. And I double-checked it, and every citation in the complaint is to 706-1. They do not have a 706-1 claim for two reasons. One, in these statutes, the 706-1 claim is the mandatory duty claim under the APA. In statutes that have a citizen suit provision that allows a citizen to bring a claim that an agency is not doing something that is a mandatory duty, that citizen suit provision displaces the APA. And the ESA is not the only statute with a citizen suit provision like that. The Clean Water Act has one. The Clean Air Act has one. There's a whole body of law that says you don't get to have an APA claim when you already have the opportunity to bring a mandatory duty claim under the citizen suit. But on that theory, we could just send it back, and they can amend their complaint. So let's, I mean, why wouldn't they have a complaint for, you know, a traditional APA complaint for a decision that is arbitrary, capricious, or not in compliance with law on the ground that you said that this isn't a DPS, but then retain the listing while you consider something else, and they could say, well, you don't have authority to do that. Okay. Leaving aside they didn't plead it, the reason they would not have that claim, a legitimate claim, is actually what a district court in the District of Columbia found a couple of weeks ago in another suit also trying to claim that there's a duty to delist the MERLIT. That court explains, and I've provided that citation to the court in a 28-J letter, and I don't know if it chased you down on your travels here. But as that court, I think, explains very well, the status review is not a final agency action. In order to bring a claim under 706-2 of the APA, you have to have a final agency action. Why is it not a final agency action? Because it is not, it does not have legal consequences, is what that court correctly held. The, and let me illustrate, had the decision been different, one of the other options, for example, at the end of the status review, the agency says, yes, in fact, there should be a delisting if it checked that box. Well, that doesn't make the delisting happen. It has no legal consequences. And the maintain, just saying, you know, there's no change in listing warrant, it doesn't have legal consequences. So there is no final agency action, so there is not a legitimate 706-2 claim to just challenge a status review. Now, going back to why they don't bring a petition to delist is something we just don't fathom. But for whatever their reasons, for reasons of their own, they haven't brought it, but the way that it is set up in the petition process, if they would bring a petition and the agency says, you know, your petition, we reject your petition, we think delisting is not warranted. Section 4B in the ESA specifically says they can go seek judicial review of that. I don't know if they would have a right in the APA otherwise, but we do know they had that right because the statute expressly states that. So if, I'm going to, I would like to talk to you. So is your conception of this five-year review kind of parallel to like a NEPA statement where the agency, it's to see that the agency goes through a process and considers things, but it doesn't determine, necessarily determine the decision. But we do have review of NEPA statements, as NEPA statements. How do we do that? Are those APA reviews? Well, Ed, I don't actually think you could bring a claim against a NEPA statement if you don't have an action that's taken on the basis of the NEPA statement. You know, and that sometimes happens. Sometimes agencies prepare the NEPA statement because they're thinking they're going to do a project. If you decide to pull the project, you still have this NEPA statement out there, but that's not something that we would concede could ever be brought into the APA because an EIS is not a final agency action. It's simply an analysis, as is a status review, in effect. And, but the other, the- And if the statute didn't have the petition option, there might be some impetus to try and develop something that would force the agency's hand. Because if you have an agency that said, you know, I agree that this shouldn't be listed, but I'm not going to delist it, that would seem like a peculiar situation. But here, there was an answer to that, and they didn't use it. Exactly. I think that the petition, the option of the petition is something that, you know, really has to be grappled with because Congress explicitly provided the process for doing this. And, you know, under some of the statutory interpretation principles, when Congress explicitly provides a process, courts are not to be making up a different one or providing it's a, you know, one that can infer from that because the Congress didn't, intended it not to have a different process for forcing the agency's hand. I am in the, sometimes I'm in an enviable position of saying, I'm telling courts that, you know, there really isn't a remedy for this, that there are certain agency actions for which you don't get judicial review. That is not the case today. There is an option for them, it's simply they don't want to use it. And I am, you know, I'm baffled as to why that is so. Is that partly the answer to my question, that the result they have here looks really weird, but it's kind of so what, that doesn't give them a case? Is that right? That's right. Even if it's weird, tough luck. Let them bring their petition. Right. I mean, with the- Do you have any idea why it looks like that, that result, or have you even considered- Excuse me, I have to- In terms of saying that the listing is not warranted, or are you talking about the DPS? The threat situation has not changed such that the DPS is no longer likely, but they just said there isn't a DPS, and that's what's- Well, I think that, you know, to be quite frank, I think it was probably a bad editing job in the sense of, you know, what it really should have said is that the tri-State MERLAT, you know, the threats are the same. You know, earlier it may have been drafted when they hadn't finished the, you know, part about it not being a DPS, but what I did want to talk to- But the real answer is, so what? Yeah, the answer is, so what? And one thing I do want to get to, and that was the last point in our brief, and I said I wanted to make it first, so if I may, the issue of- The way they framed the issue is that if an agency finds the listing is invalid, then do they have to, you know, propose a delisting? But the conditional predicate there is legally and factually not true. And so I'd like to just sort of review for the Court the rationale of the 1992 listing decision was that, first, it did find, it expressly finds in the listing decision that the three-State area comprises a significant portion of the range. And maybe I misheard, but I thought he said they only found that the entire range is a significant portion of the range, and it's not what they found. They found a three-State area. They also found that- And it had been ordered to do so, essentially, by a district court. Well, right. I mean, I guess to put this in context, there was a proposed affirmative rule, proposal to list, and in that proposed rule, the agency also stated that the three-State area, the tri-State area, is a significant portion of the range. They did not meet their deadline of issuing the final rule. Environmental groups brought in action to force them, you know, a legitimate mandatory duty claim to make them adhere to the schedule. The district court for the District of Washington, well, and then the agency said, but we really want six more months because there's a scientific dispute as to whether it's a distinct population segment. The district court denied that request for, it said you don't need more time because it is irrelevant whether it's a distinct population segment because you've already found it is a significant portion of the range, and you have to decide whether it's threatened, you know, and they did decide that the threats in that area warranted listing. Which they've now decided again, essentially. Excuse me? Which they've now decided again with this strange sentence with the DPS in it, but if you just took out DPS, it would be the same thing. Exactly. Or if they'd said tri-state, it would have been the same thing. And I would point to page, the excerpt to record page 10, which is page 6 of the status review that also, you know, explains that in 1992, this court found that the tri-state mullets qualify for listing as a threatened species throughout a significant portion of range, therefore there's no need to consider the And so again, it's another slight anomaly here is that I gather that with regard to the five-year review, it was contracted out to this company, whatever it was, who did the bulk of it. And then the U.S. Fish and Wildlife Service attaches signature page for five-year review, no change in status. And the beginning, it says the Washington, Oregon, and California published do not satisfy the criteria for designation as a DPS. There will be no change in the species status ending the completion of a range-wide status review. That's a strange way to put it. I mean, they don't say there, but we're going to continue with the listing because it continues to be threatened in a significant part of its range. They say now they're going to look range-wide. Why? Well, I think because at that time, they'd already decided they wanted to do a range-wide review. And so I think it was just acknowledging that, you know, that there was going to be more look at this. And of course, the outcome of a range-wide review doesn't necessarily, you know, could be a whole range of options of how the results of that. I mean, it could be that the listing will be expanded to cover areas that are not presently listed. It could be it'll stay the same for the tri-state area, or it could be that there would be a different, you know, allocation of what a significant portion of the range is. But the one thing that I want to stress is that Mr. Cassadre said that, I think, when asked whether it's legally valid to list only a portion, that portion, you know, a portion of a species, I believe he said that you must list the whole species in answer to the question about the alligator. That is not correct. The position that I think this court found in Defenders of Wildlife versus Norton, the lizard case, and then in the solicitor of the Interior's opinion of March 2007, very clearly states that if you have, you know, a population that occupies a significant portion of the range, if that population is threatened or meets the criteria for being in danger, you can list just that population. And that is what's, you know, at bottom wrong with their whole theory here, is that you don't have to find that the tri-state merlet is a distinct population segment. You know, by saying it's not doesn't make it invalid to list just the tri-state merlet. And so, you know, even, you know, getting beyond the fact that these more common sort of legal principles as to what you have to have for mandatory duty and the language of Section 4B that repeatedly refers to the petition process as the trigger for these various scheduling things, the underlying sort of, you know, merit of their argument, you know, has absolutely no merit whatsoever. Given that, I mean, you have a three-layered response, is the district court treated the sort of first level as a jurisdictional level and would suggest that we need to reach that, that we couldn't go to the bottom and say, well, it doesn't matter because, you know, even if they're otherwise right, there's nothing here. Do you agree with, I mean, do we need to do it that way? Do we need to determine what their sort of structural position is correct, i.e., whether they have any right being, any cause of action here to begin with, is that a cause of action question which we could skip or is it a jurisdictional question which we can't? Well, you know, they're really the same analysis for both. And it's jurisdictional because when the United States, you know, when a federal agency sued, there has to be a waiver of sovereign immunity and our position is that a waiver of, you know, that's a jurisdictional element. And, you know. So that would have to tie our hands to some degree under Steel Co. and all that with regard to what does seem like a simpler way to resolve all this and it would seem to suggest that we can simply say, well, look, it is a significant part of the range. The agency said so when they didn't do list and that's the end of it and there's nothing here, but I'm not sure we can do that. Well, maybe you can. I mean, that's why I structured the brief the way I did because the first question, which is do we have a legitimate mandatory duty claim? The answer is no because in reality they're challenging the reasonableness of the continued listing decision that is, you know, a jurisdictional element because in order to bring a mandatory duty claim, you have to show there's a mandatory duty and they haven't done that and they've, you know, what they've done is, you know, try to disguise a challenge to the conclusion as a parties try and is generally rejected. So I think, yes, the court could stop there and perhaps it has a duty to stop there and maybe I am talking about why this burden needs to stay listed in order maybe to reassure you that it is the correct decision and therefore one need not pause about the obvious answer on the jurisdictional question as well. So at this point, I guess there were only a couple of, one little nitpick I had with the reply brief that I'll mention before closing and that was the, this idea that it being a futile, the futility exception in that filing a petition would be a futile exercise. I guess I have a couple comments on that. If they were correct, which they're not, but that the status review itself shows that, you know, delisting has to occur, then I don't think it would be very difficult for them to file a petition and, you know, staple the status review to it. But in their right that the likely outcome is that the agency would find, well, that, you know, that doesn't show that listing, no, delisting is required or needed, but if they did get that not warranted finding, that is not, the petition itself for delisting is not warranted, again, I'd like to point out that they, the statute then provides them an avenue to get judicial review and that's why it's not a futile exercise for them to file a petition because if they go that route, they get, they get into court, but if they go the route that they've tried in this case, they're barred. And they get into court on what standard, an arbitrary, capricious, or, or, or It would be an arbitrary, capricious review of the administrative record for the decision that it's not warranted, that delisting is not warranted. Thank you very much. Thank you, Your Honor. What I would like to stress here is that Coos County is not seeking the immediate delisting of the Tri-State Merillet such that the Merillet would be delisted tomorrow, only that the service immediately initiate the delisting procedures in accordance with the regulatory process and that includes the notice, proposed regulation, followed 12 months later. But, but then you're, you're, then you're on weaker ground, it seems to me, because then you are trying to wrap in the petition provisions that specifically don't apply. I mean, it's one thing if you come in and you're saying, you know, let's just go right to the APA and, and, and as I said before, you, maybe you didn't allege the right subsection of the APA, but we could send it back and you could, you know, amend your complaint and we could then see that, you know, and then we have this other issue. Is there, is it a final agency action? But if it, do you, do you, do you, first of all, do you agree that you haven't alleged anything but the mandatory duty part of the APA? No, Your Honor. The 706C2, 706C2 was briefed to, was argued extensively below in the, in the motion. But, but it's not in your complaint. But, so let's assume you can do it. So then, then, then there'd be an issue about whether it's a final agency action that's reviewable. In this case, we are arguing that the APA, under our APA claim that this is a final action. Under the ESA claim, we've indicated that we believe it's lacking in finality because we believe that the Secretary failed in the nondiscretionary duty to make the removal, removal determination and then implement delisting. But going back to the time element, and the reason I brought that up, Your Honor, was because the service here has never listed the entire marbled murrelet population as threatened or endangered. But they're free to conduct their reviews as they've indicated that they want to do following the five-year review. But the point is, they've only listed the DPS. They've all, always only listed the DPS. And when they concluded that the DPS, that the tri-state murrelet was not a DPS, they must delist that population. They're free to conduct their review and, and, and determine if the marbled murrelet, whatever they determine. But the point is, it is, it is unlawful for a DPS, for a population to be listed as a DPS when the service has recognized that it is not a DPS. I've also looked at the defender's case and every example that's listed there of a population that's listed as threatened comes from a population that is a DPS. And in this case, the marbled murrelet, tri-state murrelet is a DPS. It was listed as such. And it, since it's no longer qualifies for delisting, the service is without discretion and must implement delisting procedures. That's really the basis of our argument. It, again, the five-year process is an independent basis for review. It's not just a meaningless research tool, as the service would argue. It may be a non-meaningless research tool. Thank you very much for your argument. But it's not a, we're saying it's more than just a research tool. It provides, Section 4C provides a duty of the service to conduct the five-year review, to make a removal determination, and Section 4C1 provides a duty for the service to delist, to reflect those recent removal determinations. Thank you very much, counsel. Thank you, Your Honor. Thank you both, counsel, for an interesting argument and an interesting case. The case of Coos County Board v. Kempthorne is submitted. We will take a short recess. Thank you.
judges: Fernandez, Berzon, Wright